## THE STATE vs. JOHN L. WARREN.

Kent County, April Term, 1893.

**Defence. Trespass on Lands. Deadly Weapon.**—No mere entry or trespass on lands or premises of another against his admonitions and commands, however wrongful it may be, can justify or excuse a resort to the use of a deadly weapon.

**Defence. Provocation. Deadly Weapon.**—No mere words or gestures, however insulting or irritating, can free a slayer from the guilt of murder if the person was killed with a deadly weapon.

**Self-defence.**—To sustain the plea of self-defence the jury must be satisfied from the evidence that the defendant did not seek the quarrel; that he retreated as far as he possibly could before he struck the fatal blow, and that he then only struck to save his own life or to protect himself from enormous bodily injury, and that the danger was such as to justify an ordinarily prudent man in taking such measures of defence.

The prisoner was indicted for the crime of murder of the first degree, but at the trial the Attorney General in the exercise of the discretionary powers conferred upon him by virtue of his office, under the proof, withdrew the charge of murder of the first degree and asked for a conviction of murder of the second degree. The facts sufficiently appear in the charge of the Court.

LORE, C. J., (charging the jury.)

On the twenty-fifth day of February last at Mispillion Hundred, in this county, James P. Greenly went to the house of his brother-in-law, John L. Warren, and in an altercation between them there Greenly was stabbed in the left leg with a knife in the hands of Warren, which severed the femoral artery, and from which Greenly bled to death. For this act Warren stands indicted for murder in the first degree. If the evidence warranted it you might find the prisoner guilty of murder in the first degree under this indictment, or of the second degree, or of manslaughter, or if

the evidence should warrant it you might acquit him. The State, in its mercy, does not ask that he be convicted of murder in the first degree. You can therefore only convict him of murder in the second degree or of manslaughter.

Murder in the second degree is where a man kills another suddenly without any or without any considerable provocation when the killing is done, or when the mortal wound is inflicted with a deadly weapon, and it is the crime known to the common law as murder with implied malice aforethought; *State vs. Buchanan,* 1 Houst. Crim. Cas. 85.

Malice is the test of murder. In murder of the second degree malice is implied from the unprovoked wickedness of the act itself. Malice is implied by law from every, deliberate, cruel act committed by one person against another, however sudden that act may be; *State vs. Pratt,* 1 Houst. 262.

Manslaughter may be defined to be the killing of a human being without malice either express or implied, but under such circumstances as cannot render it wholly innocent or excusable or justifiable in law. When the killing is done in the sudden transport of passion and heat of blood on a sufficient provocation in contemplation of law it is imputed by the benignity of it to the weakness and to the infirmity incident to our nature, which negatives the implication of malice which is essential to constitute murder in the second degree under our statute.

Bearing those two definitions in mind, let us apply the principles of law to this case.

Every sane man is conclusively presumed to contemplate the natural and probable consequences of his own act. Therefore if he wilfully so uses a knife, a deadly weapon, as to cause the death of another he is presumed in law to have intended such results, and the burden of removing this presumption is on the accused. In a charge of murder, malice is presumed from the killing, unaccompanied with circumstances of extenuation, and the burden of disproving malice is therefore upon the accused. In this case the killing is not disputed, therefore the presumption of mur-

·der in the second degree or murder with implied malice aforethought is distinctly raised by the law. The extenuating circumstances urged by the defence against this presumption are (1) trespass, (2) provocation of words and threats and (3) self-defence.

First. It is undoubted law that the owner or the tenant of land is justified in using all necessary force to eject the trespasser therefrom. The force used, however, must be only such as is necessary to put the trespasser off of the land. His purpose must be to put the trespasser off and not to do him bodily harm or to provoke a conflict. No mere entry or trespass on lands or premises of an·other against his admonitions and commands, however wrongful it may be, can justify or excuse a resort to the use of a deadly weapon as it was proved in this case. The test of the defence of trespass is this: Do you believe from the evidence in this case that Warren's object was only to get Greenly off of his premises, and that he only used so much force and violence as were necessary under the circumstances to effect that purpose? For no one may take the life of a trespasser on his premises except to save his own life or to escape enormous bodily harm.

Second. The defence of provocation. We say to you that it is well settled that no mere words, however insulting or offensive, no gestures however irritating, can free a slayer from the guilt of ·murder if the person was killed with a deadly weapon, and further, if there was a purpose to do him some great bodily harm, ·and if upon provocation by words or gestures only the person in the heat of passion intended merely to chastise the insolence of the other by a box on the ear or a stroke with a small stick or other ·weapon not likely to kill from which death accidentally ensues this would be but manslaughter; 3 Green. Ev. § 124. In order to reduce the crime to manslaughter, however, the weapon used must ·be such as would not be likely to kill. A knife which would make a wound five and one-half inches deep, however, is not such a weapon. Such a knife is a deadly weapon. Further on this point ·we say to you that you must throw out of this case whatever words ·or threats were used by Greenly to Mrs. Warren on the day of the

killing before Warren came up and which were not made known to Warren. You readily see as they were not communicated to Warren they could not have any influence whatever upon his conduct.

Third. Self-defence is a right that human laws have always sacredly guarded. The right to save one's own life, to protect one's own person from enormous bodily harm has been zealously maintained by all self-respecting people and favored by the law. But to set up this defence and to escape the consequences of his act it must be clearly shown to you that the prisoner acted only in self-defence, and that what he did to Greenly was only for the purpose of saving his own life or to escape enormous bodily harm. Neither fear nor the apprehension of death or of great bodily harm will totally excuse one person for killing another, but to have effect in law the danger must be imminent and impending at the instant, and must be real and not imaginary. He must have declined the combat and retreated from his assailant as far as he could do so consistently with his own safety. The hazard to his life and person must be so great, so pressing, so immediate as to allow of no further retreat on his part to avoid the necessity of killing his assailant, without imminent danger to his own life and person, or affording some great advantage to him in the crisis impending between them; *State vs. Hollis*, 1 Houst. 27. And the jury must be satisfied from the evidence that unless he had killed his assailant he was in imminent and manifest danger either of losing his own life or of suffering enormous bodily injury; *Leach vs. Coster*, 1 Houst. Crim. Cas. 345. A man may defend himself against his assailant where he cannot escape him, but he cannot do it as he pleases. If one be assaulted with the fist he cannot defend himself with a club or deadly weapon, because the defence is altogether disproportionate to the offence, and if in such defence death ensues the law implies malice from the character of the weapon used, and the person is guilty of murder.

To sustain then the plea of self-defence you must be satisfied from the evidence in this case that Warren did not seek the quar-

rel; that he retreated as far as he possibly could before he struck the fatal blow, and that he then only struck to save his own life or to protect himself from enormous bodily injury. You must be further satisfied that the peril or danger was such as would justify any ordinarily prudent man in taking such measures of defence. It is not what any man may see fit to think in such a strait, but what an ordinarily prudent man would do and what the prisoner reasonably believed from all the circumstances surrounding him and known to him at that time.

In making up your verdict you should be governed only by the evidence in this case received by you from the witnesses in this court room. Whatever you may have received, if anything, from any other source must be utterly discarded, or you will be untrue to the solemn oath that you have taken. We say this to you fully believing that you would not wittingly do wrong, and may perhaps have thought that you could rightfully use such statements and impressions received from other sources.

You are the sole judges of the evidence in this case; with this the court has nothing to do—it is our only duty to give you the law; it is your exclusive privilege to deal with the facts; and under the solemn sanctity of your oath and your enlightened consciences to apply the law to the facts and say whether this prisoner is guilty or not guilty.

If from the law and the facts so considered you find the prisoner guilty of murder in the second degree, your verdict should be "Not guilty in manner and form as indicted, but guilty of murder in the second degree." If you find him guilty of manslaughter your verdict should be "Not guilty in manner and form as indicted, but guilty of manslaughter." If you should believe that he acted solely in self-defence, within the law of self-defence above defined, your verdict should "Not guilty."

If upon all the evidence you entertain a reasonable doubt as to the guilt of the prisoner, such a doubt as compels you as conscientious men not to believe in his guilt, the doubt must inure to his acquittal.

With the consequences of your verdict to the prisoner and to his family, you have nothing to do. Your one duty is truly to find and by your verdict declare simply whether he is guilty or not guilty. It is a most solemn and sacred duty and one which you can only discharge by being absolutely true in the highest sense, to yourselves, to the prisoner and to the community in which you live.

*Verdict:* " *Not guilty in manner and form as indicted, but guilty of manslaughter.*"

*John R. Nicholson,* Attorney General, and *Branch R. Giles,* Deputy Attorney General, for the state.

*James Pennewill* and *R. R. Kenney,* for the defendant.